**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 9, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

GEORGE CLIFFORD MURPHY,

        Petitioner - Appellant,

v.

LOU ARCHULETA and JOHN
SUTHERS,

        Respondents - Appellees.

No. 10-1350

(D. Colorado)

(D.C. No. 1:06-CV-01899-MSK-KLM)

**ORDER DENYING**
**CERTIFICATE OF APPEALABILITY**[*]

Before **HARTZ**, **ANDERSON**, and **TYMKOVICH**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this matter. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

Petitioner George C. Murphy, proceeding *pro se*, seeks a certificate of

appealability ("COA") to enable him to appeal the denial of his 28 U.S.C. § 2254

---

[*]This order is not binding precedent except under the doctrines of law of
the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

petition for a writ of habeas corpus alleging various infirmities in his Colorado state convictions for sexual assault. To obtain a COA, Mr. Murphy must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see Slack v. McDaniel, 529 U.S. 473, 483-84 (2000). Because Mr. Murphy has not made such a showing, we deny him a COA and dismiss this matter.

## BACKGROUND

The following facts are taken from the district court's recitation of the facts, which Mr. Murphy does not dispute. On a late summer evening in 1999, the victim of Mr. Murphy's sexual assault, a nine-year-old girl referred to as "A.S.," went outside her house to look for her dog. At this time, her mother was drunk and passed out on a bed inside the house. While A.S. was outside looking for her dog, she encountered Mr. Murphy and another man known as Arnie or "Psycho." She later testified that both men took turns holding her down while the other raped her. When A.S. returned to her house, she found her mother still passed out, so A.S. did not tell anyone immediately about what had happened.

Shortly after this sexual assault, A.S. moved in with Rick Lawler, a former boyfriend of A.S.'s mother. Mr. Lawler's sister, Michelle Teeter, began to notice that A.S. displayed inappropriate behavior with Ms. Teeter's children, including trying to touch her "sons' private areas and [kissing] . . . them and [hanging] on

-2-

them." Recommendation of Mag. J. at 3 (alterations in original). A.S. began to complain that she experienced itching, burning and stinging in her vaginal area. She also began to take five to eight showers each day, claiming that she "felt dirty." Id. A.S.'s strange behavior escalated and prompted Ms. Teeter to ask A.S. if she had ever been touched inappropriately. A.S. did not respond immediately, and she became fidgety and tried to change the subject. At first, she only admitted that Psycho had touched her private parts. Later that day, while Ms. Teeter, her family and A.S. were at an amusement park, A.S. became hysterical, stating that she was seeing visions of her attackers. The next day, as Ms. Teeter and her mother tried to talk to A.S., A.S. began to cry and eventually admitted "that there wasn't just one man, there was two, and they did put their penis inside of her." Id. She identified the second man as "George." At the time of the incident, A.S. only knew one person named George—i.e., Mr. Murphy.

The police were summoned, and during the police investigation into the incident, Detective Nancy Lee interviewed A.S. While A.S. was initially hesitant to talk about what had happened, she told Detective Lee a story consistent with the one she had told Ms. Teeter and her mother, including the fact that George and Psycho had both raped her.

After the interview, Detective Lee identified petitioner, Mr. Murphy, as the individual named George. Mr. Murphy lived, at that time, in the area where the

sexual assault had taken place. Ms. Lee put together a photographic lineup with a picture of Mr. Murphy, and A.S. identified him as one of her abusers.

Mr. Murphy was arrested and charged. At Mr. Murphy's trial, A.S. was unable to identify him because she did not want to look at him closely and because his appearance had changed. For example, Mr. Murphy wore his long hair in a ponytail at trial, and he appeared to have brown eyes, while A.S. recalled that her abuser had blue eyes. In fact, it was confirmed that Mr. Murphy had blue eyes. Despite the fact that A.S was unable to make an in-court identification of Mr. Murphy, A.S. was able to testify that the man she identified in the photographic lineup was the same man who had raped her, and there was no dispute that the picture A.S. had identified from the lineup was, indeed, Mr. Murphy.

Also at trial, evidence was presented that A.S. had attempted to recant her allegations of sexual abuse prior to trial. Despite those earlier recantations, A.S. testified at trial that Mr. Murphy and Psycho had sexually assaulted her, as she had previously stated to Ms. Teeter, A.S.'s mother and Detective Lee. A.S. explained that her attempts to recant the allegations were due to her fear of testifying at trial and her fear of being taken out of her home.

The jury found Mr. Murphy guilty of first-degree sexual assault and sexual assault of a child by use of force, in violation of Colo. Rev. Stat. 18-3 §§ 402--405. He was sentenced to concurrent twelve and sixteen year sentences of

imprisonment. Mr. Murphy filed an appeal, which the Colorado Court of Appeals ("CCA") denied. People v. Murphy, No. 99CA1759 (Colo. Ct. App. Jan. 18, 2001) (unpublished) ("Murphy I"). The Colorado Supreme Court denied Mr. Murphy's petition for a writ of certiorari. Murphy v. People, No. 01SC159 (Colo. May 29, 2001) (unpublished).

Mr. Murphy also pursued postconviction relief in state court. In July 2003, Mr. Murphy filed a motion pursuant to Colo. Crim. P. 35(c), in which he primarily argued that his trial counsel was ineffective. The trial court held an evidentiary hearing and denied him relief. The CCA affirmed. People v. Murphy, No. 04CA0362 (Colo. Ct. App. Dec. 22, 2005) (unpublished) ("Murphy II"). On further appeal, the Colorado Supreme Court declined to grant certiorari. Murphy v. People, No. 06SC191 (Colo. June 19, 2006) (unpublished).

On September 25, 2006, Mr. Murphy filed the instant action in the district court, raising three claims for relief, two of which are related claims of ineffective assistance of counsel:[1]

| | |
|---|---|
| Claims I, III | Counsel's defense at trial and conflict of interest constitute ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments. |
| Claim II | The prosecution presented false testimony and improper evidence at trial and there was insufficient evidence to convict [Mr. Murphy] in violation of the Fourteenth Amendment. |

[1]The matter was referred by the district court to a magistrate judge for an initial recommendation.

Recommendation of Mag. J. at 5. The magistrate judge noted that Mr. Murphy also included an argument concerning the sufficiency of the evidence.

The magistrate judge concluded that portions of claims I and II were not exhausted and, as such, were procedurally barred. These specific claims were the contention that Mr. Murphy's appellate counsel was ineffective for failing to file a notice of appeal on the issue of conflict of interest,[2] and the claim that the prosecution presented false testimony and improper evidence at trial. Accordingly, the magistrate judge declined to address them further.

The magistrate judge did, however, address Mr. Murphy's remaining claims, which the judge characterized as follows: "(1) Counsel did not adequately represent [Mr. Murphy] at trial; (2) Counsel 'labored under a conflict of interest,' . . . and (3) There was insufficient evidence to convict [Mr. Murphy] of the sexual assault." Id. at 10.

With respect to the adequacy of Mr. Murphy's counsel's representation, the magistrate judge noted that Mr. Murphy alleged inadequacy in several respects: that counsel had failed to investigate and/or present the defense that no crime had, in fact, occurred; counsel failed to investigate and/or introduce exculpatory evidence; and counsel failed to communicate his defense strategy to Mr. Murphy.

---

[2]The claimed conflict of interest was based on the argument that Mr. Murphy's counsel labored under a conflict, until Mr. Murphy's conviction became final, because counsel concealed his knowledge of a *pro se* motion filed by Mr. Murphy to replace him.

-6-

The magistrate judge summarily dismissed Mr. Murphy's third claimed inadequacy (failure to communicate his defense strategy to Mr. Murphy), concluding that, as the CCA held in the appeal of his postconviction filing, Mr. Murphy "failed to allege sufficient evidence that his counsel was neglectful or that the alleged lack of communication impacted the trial or counsel's representation." Id. at 12.

The Magistrate Judge rejected the other two claims of inadequacy, after reviewing their merits. More specifically, applying the requisite deferential standard under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), it found the CCA's disposition of these claims was not contrary to or an unreasonable application of Supreme Court precedent, nor did the CCA unreasonably apply the facts and evidence available to it: "To summarize, the CCA's decision that trial counsel provided effective assistance is not contrary to, nor did it involve[,] an unreasonable application of federal law, nor does it represent an unreasonable determination in light of the facts presented in the state court proceeding." Id. at 18.

The magistrate judge also rejected Mr. Murphy's remaining claims (that Mr. Murphy's counsel labored under a conflict of interest[3] which impaired his ability to represent Mr. Murphy, and that there was insufficient evidence to convict Mr. Murphy of sexual assault. The magistrate judge rejected the conflict

---

[3]See n.2, supra.

of interest claim, stating, "[a]t most, Respondents argue that Applicant asserts a difference of opinion with his trial counsel that led to the motion's [to replace counsel] filing. Regardless of the characterization, the Court notes that disagreements regarding trial strategy or tactics and personality disputes do not amount to a constitutionally recognized conflict of interest." Id. at 19. The magistrate judge characterized Mr. Murphy's "primary argument" as claiming that "the victim's inability to positively identify him as her attacker in court precluded the jury from finding him guilty." Id. at 20. The magistrate judge also noted, however, that Mr. Murphy claims that a "lack of physical evidence linking him to the crime amount[s] to insufficient evidence to find him guilty." Id.

Turning to the merits of that argument, the magistrate judge found "[u]pon review of the record, . . . that despite the issues with the in-court identification, the victim's earlier recantation, and lack of physical evidence, there was sufficient evidence for a reasonable juror to conclude that [Mr. Murphy] sexually assaulted the victim." Id. at 22. Regarding the physical evidence issue, the magistrate judge concluded that, "despite the lack of physical evidence, the victim's genitals were not necessarily inconsistent with the alleged abuse and her dramatic emotional and behavioral changes after the incident further corroborate that the assault did occur." Id. The magistrate judge summarized once again, "the CCA's decision on the sufficiency of the evidence is not contrary to, nor did it involve an unreasonable application of, federal law, nor does it represent an

-8-

unreasonable determination in light of the facts presented in the state court proceeding." Id.

After considering Mr. Murphy's objections to the magistrate judge's recommendation, the district court issued a minute order adopting the recommendation, denying Mr. Murphy's habeas petition and also denying a COA. Additionally, the district court denied Mr. Murphy leave to appeal *in forma pauperis*.

Mr. Murphy seeks a COA to enable him to appeal that decision, arguing: (1)"[n]o District Judge, or Magistrate has ever addressed Plaintiff's motion entitled (Memorandum/Brief in support of Actual Innocence Forensic Challenge)." Appellant's Op. Br. at 1; (2) in his state collateral attack, his counsel failed to raise the potentially successful claim that the "[v]ictim's 'Hymen' was wholly 'INTACT' indicating or establishing that alleged 'VICTIM' was Actually a 'VIRGIN' and 'NOT' a 'VICTIM' of Gang Rape or Sexual Assault." Id. at 1-1(b);[4] (3) both the trial judge and the district attorney "lacked authority from inception[] to bring said charges or enter said Void Judgment/order(s) . . .; therefore said court lacked subject matter or In-Personam Jurisdiction of the Plaintiff." Id. at 2(b); (4) his counsel was ineffective; and (5) the "Jury was not properly instructed[,] or if properly instructed they were not

---

[4]Mr. Murphy actually argues that "[a]ll prior Courts" have failed to address the issue of the condition of A.S.'s genital area when she was medically examined.

properly informed of All Exculpatory Evidence/Results available to the defense." Id. at 3.

**DISCUSSION**

Pursuant to 28 U.S.C. § 2253(c)(2), a prisoner seeking a COA must make "a substantial showing of the denial of a constitutional right." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). He may do so by "showing that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). Thus, when the district court has ruled on the merits of the prisoner's claims, he must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. Where the district court ruled on procedural grounds, a COA may be granted when the petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and . . . whether the district court was correct in its procedural ruling." Id.

To the extent Mr. Murphy wishes to raise issues addressed in the lengthy and thorough recommendation of the magistrate judge, which the district court adopted in whole, we deny Mr. Murphy a COA, for substantially the reasons stated in that recommendation. Those issues are the ineffective assistance of

-10-

counsel claim, and the claim about physical evidence linking Mr. Murphy to the sexual assault. The magistrate judge/district court expressly held that the condition of the victim's genitals did not amount to, as Mr. Murphy repeatedly claims, clearly exculpatory evidence. Indeed, Mr. Murphy raised this argument in state court as well, and the medical examination materials to which he presumably refers are not the unambiguous evidence that no sexual crime occurred.[5]

Mr. Murphy's other issues are either newly raised on appeal, or simply so conclusory and vague as to be incapable of review. His argument about the "jurisdiction" of the trial court and/or the prosecutor was denied by the district court below, for reasons with which we completely agree. Mr. Murphy's argument about jury instructions is simply too vague to consider, nor does he appear to have raised it before the district court. "Issues not raised in the district court will not be considered for the first time on appeal when there is no showing of an impediment to the appellant that precluded his raising the issue." United States v. Chee, 514 F.3d 1106, 1115 (10th Cir. 2008). It certainly is not grounds for issuing a COA.

---

[5]This general claim includes the issue Mr. Murphy denominates as his first issue: his allegation that no one has ever addressed his memorandum/brief regarding his actual innocence claim. In that brief, Mr. Murphy makes the same argument he has made repeatedly about A.S.'s genitals and the condition of her hymen, as referred to in the medical examination materials. This claim has been addressed numerous times, by numerous courts. Mr. Murphy provides no basis for a new, independent forensic exam in this case.

To sum up, the district court, adopting the magistrate judge's recommendation, found that certain of Mr. Murphy's claims were procedurally barred, and the remaining claims were meritless. With respect to all of those claims, we have carefully reviewed the magistrate judge's recommendation, the district court's order adopting that recommendation, and the entire record, and we cannot see how reasonable jurists would find any of the district court's determinations debatable or wrong.

## CONCLUSION

For the foregoing reasons, we DENY Mr. Murphy a COA and DISMISS this matter. We also DENY his request to proceed on appeal *in forma pauperis*.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge